IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EARL WAYNE HUMPHRIES,      §
TDCJ No. 2192900,          §
                           §
          Petitioner,      §
                           §
V.                         §        No. 3:19-cv-2100-B-BN
                           §
DIRECTOR, TDCJ-CID,        §
                           §
          Respondent.      §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Earl Wayne Humphries was indicted for the capital murders

of Alejandro Morales-Martinez and Luis Arturo Segovia. "He pleaded guilty

to the two lesser charges of murder, each enhanced by two prior convictions,

under plea bargains with the State." *Humphries v. State*, No. 05-18-00460-

CR, No. 05-18-00461-CR, 2018 WL 4203639, at *1 (Tex. App. – Dallas Sept. 4,

2018). The state trial court followed the plea bargain agreements (which

included a forfeiture of Humphries's right to appeal), "found [Humphries]

guilty, and assessed punishment at thirty-five years in prison in each case."

*Id.*

Humphries filed a *pro se* "Motion to Appeal Sentence Based on

Ineffective Counsel," arguing that his counsel was ineffective and coerced him

into accepting the State's plea offer. *See* Dkt. No. 15-5 at 53. He also filed a

counseled motion for a new trial before the trial court on the same grounds.

*See id.* at 67. The motion for a new trial was denied by operation of law after

1

the state trial court failed to rule on it within 75 days. The state appellate court dismissed Humphries's direct appeal for want of jurisdiction, noting that, "although [Humphries] did not waive his right to file his motions for a new trial, he did waive his right to appeal when he pleaded guilty under plea agreements with the State which were followed by the trial court." *Humphries*, 2018 WL 4203639, at *1. Humphries then filed a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals (TCCA), which it refused on November 21, 2018. *See Humphries v. State*, Nos. PD-1044-18, PD-1045-18, 2018 WL 4203639 (Tex. Crim. App. 2018).

Humphries also filed two applications for habeas corpus in state court. Humphries filed the first state habeas petition before the TCCA ruled on his PDR, so it was dismissed as premature. WR-89, 481-02 (Tex. Crim. App. March 20, 2019).

But the TCCA did consider the merits of Humphries's claims in his second petition, in which the state habeas trial court – with the same judge presiding who presided over Humphries's underlying state trial court proceedings – offered findings of fact and conclusions of law recommending that Humphries's petition be denied – a disposition to which the TCCA agreed and denied Humphries's petition "without written order on findings of trial court without hearing." WR-89, 481-03 (Tex. Crim. App. June 5, 2019).

Humphries then filed a *pro se* 28 U.S.C. § 2254 habeas petition [Dkt. No. 3] on August 30, 2019, the date on which he certifies that he placed the

petition in the prison mailing system[1], *see id.* at 10. He raises for federal habeas review claims that his trial counsel was constitutionally ineffective, that his guilty plea was coerced, that his counsel lied in his affidavit to the state habeas court and failed to give Humphries access to his case file, and that he was denied due process of law. His case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from the presiding United States district judge. The State responded to Humphries's habeas application. *See* Dkt. No. 14. Humphries filed a reply brief. *See* Dkt. No. 18.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on

---

[1] *See* RULE 3(D), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2244(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'"

(citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long

as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ

6

in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the

decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten

[the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d, at 933.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme

Court." *Evans*, 875 F.3d at 217.

## Analysis

I.    <u>Ineffective Assistance of Counsel ("IAC")</u>

In his federal habeas application, Humphries asserts two grounds for relief concerning the effectiveness of his counsel. In his first ground – entitled "ineffective assistance of counsel, absence of counsel, coercion by threat" – Humphries complains generally that he received inadequate communication from his counsel and that his counsel threatened to gauge a pencil into his eye (presumably if he did not accept the State's plea offer). *See* Dkt. No. 3 at 6. (Humphries was represented by two attorneys in the original proceedings before the state trial court: Richard Franklin and Roshanda Walker. The undersigned refers to them collectively as "counsel" and to Franklin specifically as "Franklin.")

In the second ground, entitled "neglency [sic], ineffective assistance of counsel, absence of attorneys," Humphries complains that his counsel missed unspecified court dates prior to the final plea offer. *Id.* Humphries also complains that he was not allowed to speak to the prosecutor or his family members before deciding whether to take the plea offer. Finally, Humphries complains of irregularities in documents from the state trial court proceedings and that his counsel failed to inform him of the victim impact statement process. *See id.*

10

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*,

695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that

performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the

"doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are

14

not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[2]

Finally, when, as is the case here, the trial court and the state habeas court are one in the same, this deference is especially strong. *See Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *Amos v. Scott*, 61 F.3d 333, 347 (5th Cir. 1995).

A. IAC Ground 1

Turning to the merits, in connection with the state habeas proceedings, court-appointed trial counsel, Richard K. Franklin submitted a detailed affidavit describing his representation of Humphries. The state habeas trial court adopted Franklin's affidavit for purposes of its findings of fact, *see* Dkt.

---

[2] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

No. 15-23 at 40-45, which the TCCA later adopted. *See* Dkt. 14-24. This credibility determination is subject to deference from this Court. *See Trottie v. Stephens*, 720 F.3d 231, 243-44 (5th Cir. 2013) (holding a state habeas court's express reliance upon a trial counsel's affidavit to reject an ineffective assistance of counsel claim was a credibility determination to which the federal habeas court was required to give deference); *Morales v. Thaler*, 714 F.3d 295, 303 n.4 (5th Cir. 2013) (holding state habeas court's implicit determination that two witnesses were not credible was a factual finding to which the federal habeas court was required to give deference).

In his affidavit, Franklin avers that he was initially concerned that Humphries would receive the death penalty, given the cold-blooded circumstances of the murders. *See* Dkt. No. 15-23 at 47. Franklin told Humphries "that his only real option was a plea agreement. He was told that the State would have two opportunities to convict him of capital murder. It was further explained that if we raised the issue of identity of intent at trial, the other capital murder could be used against him in the guilt innocence phase." *Id.* Franklin felt that Humphries should take life with parole, if offered.

When Humphries was brought to court to set a date for trial, he was offered a plea of 40 years concurrent. Humphries wanted time to think about the offer and discuss it with his family, which Franklin thought was absurd because the offer was extremely generous. *See id.* Further, for as long as

Franklin had represented Humphries, not one person had contacted him on Humphries's behalf. *See id.* His step-son and ex-wife had identified him as a killer; his friend was going to testify against him. *See id.*

Humphries believed that he could do better than 40 years in prison and asked instead for 30 years. After a tense and "embarrassing" exchange with the prosecutor, 35 years was offered for one day only. *Id.* at 48. Humphries wanted time to discuss this offer with his family, which was immediately rejected by the prosecutor. "One day only meant one day." *Id.* Humphries accepted the offer.

Threats – such as a statement that Franklin would gauge Humphries's eyes with a pencil – would have been impossible because the two were separated by a wall and communicated through a window. *See id.* The only time that Franklin and Humphries were in the same room was when they were in open court. *See id.*

Humphries was later brought back for the victim impact statements. He was angry and asked for Franklin to stop the victim statement process. *See id.* There was nothing Franklin could do, as victim impact statements were the law. *See id.* Only after the victim impact statements from the two victims' families did the complaints start.

With this background in mind, the undersigned cannot say that the state habeas court's rejection of Humphries's IAC Ground 1 was an unreasonable application of the *Strickland* standard. Humphries complains

17

that Franklin only met with him four times over a 15-month period, during which time Franklin failed to return Humphries's phone calls or respond to his letters (which were returned as undeliverable). *See* Dkt. No. 18 at 15-16. But Franklin's affidavit demonstrates communication leading up to the plea deal, as well as reasoned advice concerning same. Humphries has failed to present clear and convincing evidence showing that the state habeas court improperly credited Franklin's testimony on this point. *See* 28 U.S.C. § 2254(e)(1).

And, at any rate, Humphries fails to explain how he was prejudiced by the amount of communication he had with Franklin. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). That is, a petitioner must prove both deficient performance and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Humphries fails to meet that standard here, as he has not shown a "reasonable probability" that he would not have plead guilty if Franklin had communicated with him more.

Next, regarding the other aspect of IAC Ground 1, that Humphries allegedly was coerced into accepting the plea deal, Humphries fails to show that the state habeas court erred in rejecting relief.

A federal court will uphold a guilty plea challenged in a habeas corpus

18

proceeding if the plea was knowing, voluntary and intelligent. *See Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985). A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt. *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). The critical issue in determining whether a plea was voluntary and intelligent is whether the "defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

A guilty plea waives a number of constitutional rights. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002). So, "the Constitution insists among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

Inmates challenging their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). They

19

must also overcome the presumption of regularity and great weight accorded court records. *See United States v. Abreo* 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly).

Here, the state habeas court rejected Humphries's coercion theory. In so doing, that court explicitly noted, and implicitly credited, Franklin's testimony that the execution of a physical threat would have been impossible because Franklin and Humphries were always separated by a wall and communicated through a window. This factual finding is entitled to deference from this Court unless Humphries shows by clear and convincing evidence that it was erroneous, which he has not. 28 U.S.C. § 2254(e)(1); *Gardner*, 247 F.3d at 560.

The state habeas trial court also noted that Humphries had been asked by the trial court during the plea hearing if he had been threatened or coerced into accepted the plea bargain – and Humphries said he had not. *See* Dkt. 15-23 at 43. And this is evident from the record. In his plea agreement, Humphries explicitly states that he is mentally competent; understands the accusation against him and the punishment range for such an offense; understands the consequences of the guilty plea; admits that he committed the pertinent offense; and confirms that his plea and judicial confession were freely and voluntarily made, and not influenced by any consideration of fear,

persuasion, or delusive hope of pardon or parole. *See* Dkt. No. 14-1 at 12-15.

Given Franklin's testimony and Humphries's insistence before the state trial court that his plea was voluntary, the state habeas court found that it was so. The record supports this finding. The state habeas court's conclusion that petitioner's guilty plea was voluntary is not contrary to, and does not involve an unreasonable application of, clearly established federal law. Nor is the decision based on an unreasonable determination of the facts in light of the evidence.

For reasons that are unclear to the undersigned, there are two copies of the plea agreement in the record. One bears Humphries's signature; the other does not. *See* Dkt. No. 14-1 at 12-15. As discussed below, in what appears to be a procedurally defaulted claim, Humphries argues this irregularity supports federal habeas relief. But there is no real dispute that Humphries pled guilty; he admits as much in his federal habeas application. *See* Dkt. No. 3 at 3. He also does not contest the factual finding by the state habeas trial court that he was asked in open court whether his plea was voluntary, to which he replied that it was. And by pleading guilty, he waived objections to all non-jurisdictional defects preceding the guilty plea. *See U.S. v. Owens*, 966 F.2d 59, 60 (5th Cir. 1993). In short, the unsigned copy of the plea agreement does not change the undersigned's analysis on the voluntariness issue, especially because there is also a signed version of the plea agreement in the record – the veracity of which Humphries does not

appear to contest.

Humphries is not entitled to federal habeas relief on this, or any other, aspect of his IAC Ground 1.

B.  IAC Ground 2

Likewise, Humphries is not entitled to relief on his second IAC ground – that his counsel failed to appear on two court dates, was aggressive, would not let Humphries speak to the prosecutors or his family about the plea offer, did not inform Humphries about the victim impact statement process, failed to "sign contracts of agreement," wrote two separate bar numbers, and failed to properly complete other documents. Dkt. No. 3, p. 6.

While Humphries claims there were two court dates at which his counsel was absent, he does not give information from which this Court could find these court dates were "critical" in the constitutional sense. *See Lafler*, 566 U.S. at 165 (noting that the Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding). Instead, the state habeas court, in finding Franklin's performance constitutionally adequate, implicitly found that he was not absent during any critical proceeding. And this is supported by Franklin's affidavit, which reveals Franklin's presence throughout the plea-bargaining process. The record before this Court contains nothing that would allow it to find the state court's application of the *Strickland* standard unreasonable as to this aspect of Humphries's IAC Ground 2.

As for Humphries's complaints that he did not have longer than a day to consult with his family or the prosecutor about the terms of the plea offer, again the state habeas court did not unreasonably apply the *Strickland* standard in rejecting relief. The plea offer was for one day. That Humphries wished for more time is irrelevant. The record does not, for example, show that Franklin was dilatory in informing Humphries of the plea offer. As the state habeas trial court noted, "[a]pplicant had already had an opportunity to consider the previous offer and should have anticipated that he would not have any additional time to consider any offers (especially since he requested a lesser sentence on the day of the plea)." Dkt. No. 15-23 at 44.

And Humphries's argument that his counsel was constitutionally defective for failing to disclose the victim impact statement process to him fares no better. As the state habeas court found, such a process is simply the law, and counsel could do nothing to stop it. Humphries fails to explain how his counsel's alleged failure to advise him that such statements would be made was ineffective; nor has he shown a reasonable probability that, had he known of the process, "he would not have pleaded guilty and insisted on going to trial." *Hill*, 474 U.S. at 59.

Next, as for Humphries's claims concerning irregularities in certain paperwork before the trial court – such as the failure of his counsel to include a mailing address on the "Trial Court's Certification of Defendant's Right to Appeal" form, the lack of Humphries's signature above his printed name on

one version of the plea agreement form, and the fact that a box is unchecked which indicates that the "defendant knowingly and voluntarily waives appeal," [Dkt. No. 18 at 37-40] – it appears that Humphries raises these issues for the first time in his federal habeas application.

Humphries failed to squarely present these arguments to the CCA – whether through a PDR or habeas application – noting only that his attorney "failed to complete documents or contract." *See* Dkt. Nos. 10; 15-13 at 13-27; 15-23 at 18. The factual and legal bases for these assertions were therefore "not fairly presented to the" TCCA, as the highest available state court, for review, which means that Humphries has failed to properly exhaust state court remedies as to these claims. *Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004))); *see* 28 U.S.C. § 2254(b)(1)(A).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow

circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. But these claims are barred here because Humphries has not shown that these claims would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he asserted the "fundamental miscarriage of justice" exception to procedural bar.

And, while the State only raises the procedural bar issue as to Humphries's Ground 4 for relief (see below), the Court can raise the issue of

procedural bar *sua sponte* just as it can with issues of exhaustion. *See Magourik v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) (noting that "a federal court may, in the exercise of its judicial discretion, raise procedural default *sua sponte*"). The time in which to file objections to these findings, conclusions, and recommendation affords Humphries an opportunity to respond. *Id.* at 360 ("Once a federal district court elects to raise procedural default *sua sponte*, the court should consider whether justice requires that the habeas petitioner be afforded with notice and a reasonable opportunity to present briefing and argument opposing dismissal. Likewise, the district court should consider whether the state's failure to raise the defense is merely inadvertence or the result of a purposeful decision to forego the defense.").

But, even if Humphries did not procedurally default those aspects of IAC Ground 2 relating to supposed irregularities in the plea agreement and the trial court's certification of defendant's right to appeal, by pleading guilty, Humphries waived all non-jurisdictional defects in the prior proceedings except for challenges to involuntariness and ineffective assistance of counsel to the extent the "claimed [ineffective] assistance directly affected the validity of the waiver or the plea itself." *United States v. Hollins*, 97 F. App'x 477, 479 (5th Cir. 2004) (quoting *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002)). Thus, the claim must fail on the merits even if it was not procedurally defaulted.

26

Humphries's IAC Ground 2 should be dismissed because the state court – to the extent it was presented with the claim – did not unreasonably apply either prong of the *Strickland* standard. And, as for the claims of alleged irregularities in the "Trial Court's Certification of Defendant's Right to Appeal" and the plea agreement, the undersigned finds that such claims are procedurally defaulted and lack substantive merit.

II.    Due Process

Humphries's third ground for federal habeas relief asserts that the state trial court's failure to hold a hearing on his motion for a new trial deprived him of due process and a chance to be heard. He stresses that the state trial court initially scheduled a hearing on the motion for a new trial, but, because of issues getting Humphries to the hearing, the 75-day period of limitations under Texas law for conducting a hearing on a motion for a new trial elapsed, resulting in an automatic denial. *See* TEX. R. APP. P. 21.8(c).

But this claim is unexhausted and now procedurally barred. Review of Humphries's PDR and state habeas petitions reveals that Humphries never raised a federal due process ground for relief related to the trial court's failure to hold a hearing on his motion for a new trial. Instead the gist of the PDR was that the state appellate court misapplied Texas law in failing to use Texas Rule of Civil Procedure 2 to order the trial court to hold a hearing on Humphries's motion for a new trial. *See generally* Dkt. No. 10.

To have "fairly presented" his federal claim, the petitioner must have

reasonably alerted the state courts to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. at 29-32 (holding a petitioner failed to "fairly present" a claim of ineffective assistance of counsel merely by labeling the performance of said counsel "ineffective," without accompanying that label with either a reference to federal law or a citation to an opinion applying federal law to such a claim); *Moore v. Quarterman*, 526 F.Supp.2d 654, 686 (W.D. Tex. 2007) (finding petitioner failed to include federal due process argument in state habeas petition where the application "included a group of claims which were accompanied by a lengthy, purely state-law argument," and "[p]etitioner added a cryptic assertion in the final paragraph of that passage arguing in conclusory fashion, without any citation to federal case law, the state trial court's evidentiary ruling also violated the Fourteenth Amendment's Due Process Clause").

Humphries did complain in the PDR that the appellate court's decision meant that his motion for a new trial would not be heard, but the argument was framed as a misapplication of Texas procedural law – not a federal due process issue. Humphries cites to no federal law in the PDR, instead relying exclusively on Texas authorities. *See* Dkt. No. 15-10 at 5-7. Nor does he mention the Fifth or Fourteenth Amendments – and the words "due process" make no appearance in the PDR at all. *See generally* Dkt. No. 15-10. And his state habeas petitions, though using the words "due process violation," fail to present this specific ground for relief. *See* Dkt. No. 15-23, p. 14-18.

The closest that Humphries came to raising this ground for relief was in his motion for reconsideration [Dkt. No. 15-28], but presenting a ground for relief in a motion for reconsideration to the state habeas court does not exhaust it. *See Williams v. Johnson*, 169 F. Supp. 2d 594, 599 (N.D. Tex. 2001) ("Petitioner has not presented the claim regarding violation of the Sixth Amendment and denial of a fair trial. Presentation of this issue in a motion for reconsideration does not satisfy the exhaustion required.").

Humphries failed to "fairly present" this due process argument to the state court, and he has not shown here that the claim would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he asserted the "fundamental miscarriage of justice" exception to the procedural bar. And, while the State did not raise the procedural bar defense in relation to this claim, *sua sponte* consideration of the issue is appropriate so long as the petitioner has a chance to present argument opposing dismissal, which the time in which to file objections to these findings, conclusions, and recommendation affords. *See Magourik*, 144 F.3d at 359.

Nevertheless, even were the Court to consider the merits of Ground 3, the result is the same. Under Texas law, a defendant does not have an absolute right to a hearing on a motion for a new trial absent a showing that the motion raises matters that are not determinable from the record and establishes reasonable grounds upon which the defendant could be entitled to a new trial. *Hobbs v. State*, 298 S.W.3d, 199-200 (Tex. Crim. App. 2009). The

trial court's decision not to hold a hearing on the merits is not subject to federal habeas review. *See, e.g.*, *Haygood v. Quarterman*, 239 F. App'x. 39, 42 (5th Cir. 2007) (quoting *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("To the extent that Texas state statutes provide a right to a motion for a new trial or a hearing on such a motion, '[w]e will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.'"); *Hudson v. Director*, *TDCJ-CID*, Civil No. 1:09-CV-706, 2012 WL 3600479, at *8 (E.D. Tex. July 9, 2012), *adopted*, 2012 WL 3597772 (E.D. Tex. Aug. 20, 2012).

Dismissal of Humphries's Ground 3 is appropriate, whether on grounds of procedural default or lack of substantive merit.

III. <u>Attorney Misconduct</u>

In his fourth ground for relief, Humphries contends that Franklin lied in the affidavit that he submitted to the state habeas court and continually refuses to grant Humphries access to his case file.

The State contends that this ground for relief is procedurally barred because Humphries failed to assert it through a PDR or state habeas petition. The State is correct that Humphries's complaints about Franklin's alleged perjury were raised for the first time in his "Response after Viewing Trial Courts [sic] Finding of Facts and Affidavit," and then in his "Motion for Rehearing or Reconsideration." *See* Dkt. No. 18 at 54; Dkt. No. 15-27. A claim raised for the first time in a motion for reconsideration following a denial of

habeas relief by the state habeas court is not properly exhausted. *See Williams*, 169 F. Supp. 2d at 599. Thus, Humphries failed to "fairly present" the alleged perjury of Franklin to the state habeas court.

But Humphries points out that the perjury only came about after the state habeas proceedings started, so it would have been impossible to raise the claim in the state habeas petition. He therefore argues he had "cause" to omit the ground for relief from his state habeas petition.

"[B]ut in addition to cause, [a defendant] must show actual prejudice to overcome the procedural bar." *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996). "The movant makes this showing where he demonstrates that, but for the error, he might not have been convicted." *Id.*

Humphries does not make that showing here. He does not show how alleged misstatements from Franklin in his affidavit to the state habeas court amount to a violation of federal law sufficient to call his underlying conviction into question. Instead, Humphries appears to complain that the state habeas proceeding was infected with an infirmity – an inaccurate affidavit. Such a claim is not cognizable in a federal habeas proceeding. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) ("A long line of cases from our circuit dictates that 'infirmities in state habeas proceedings do not constitute grounds for relief in federal court.'") (quoting *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (further citations omitted)). Accordingly, this aspect of Humphries's Ground 4 is procedurally barred.

As for the claim that Franklin refused Humphries access to his case file at an unspecified time, this claim was raised, albeit briefly and vaguely, in Humphries's state habeas petition. *See* Dkt. 15-23 at 16. The state habeas court thus implicitly rejected it. Humphries fails to show how that rejection runs afoul of section 2254(d). And, to the extent that Humphries is challenging the lack of his case file during his habeas proceedings, this claim must also be dismissed as challenging an infirmity in the state habeas proceedings. *See Russ*, 256 F.3d at 320.

The Court should deny Humphries Ground 4 for habeas relief where, to the extent that it is premised upon alleged attorney perjury in the habeas proceedings, it is procedurally defaulted, and where it is otherwise meritless.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or

32

refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: January 5, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

33